IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVA MEASURING INSTRUMENTS LTD., | No. C 05-0986 MMC |
| Plaintiff, | |
| v. | **ORDER CONSTRUING CLAIMS** |
| NANOMETRICS INCORPORATED, | |
| Defendants | |
| _____/ | |

Before the Court is the parties' dispute regarding the proper construction of seven terms in U.S. Patent 6,752,689 ("'689 Patent"). Plaintiff Nova Measuring Instruments, Ltd. and defendant Nanometrics, Inc. have submitted briefs and evidence in support of their respective positions. The matter came on regularly for hearing on October 19, 2006. Neil A. Smith, David Schnaff, and Nathaniel Bruno of Sheppard, Mullin, Richter & Hampton, LLP, appeared on behalf of plaintiff. Ron C. Finley, Justin T. Beck, and Jeremy M. Duggan of Beck, Ross, Bismonte & Finley, LLP, appeared on behalf of defendant. Having considered the parties' submissions and the arguments of counsel, the Court rules as follows.

//

//

**1. Exit Station (Claims 1 and 21)**[1]

Plaintiff argues "exit station" should be construed as "a portion of the processing machine where wafers are moved after processing." Defendant argues "exit station" should be construed as "a place dedicated to the removal of the wafer from the processing machine after processing."[2]

The Court finds "exit station" is properly construed as "a portion of the processing machine where wafers are moved after processing and from which said wafers exit the processing machine."[3]

**2. Wafer Transfer Means (Claims 1 and 21)**

Plaintiff argues "wafer transfer means" is not subject to means-plus-function construction, and should be construed as "a mechanism for moving a wafer from one location to another." In the alternative, plaintiff argues that if the term is subject to means-plus-function construction, the structures corresponding to the above-quoted function, specifically, "moving a wafer from one location to another," are "robot arms," "water track," and "vacuum grippers," as identified in the specification.[4]

Defendant argues "wafer transfer means" is subject to mean-plus-function construction, the function is "moving the wafer within the exit station," and the corresponding structure is "water track 10."

The Court, for the reasons stated by defendant, finds "wafer transfer means" is

---

[1] As to all of the terms construed, where the Court has adopted a party's proposed construction, that construction is set forth below without further discussion. Where the Court has adopted one party's construction, but with some modification, or has not adopted either party's proposed construction, an explanation is provided.

[2] Unless otherwise indicated, the parties' respective proposed constructions as set forth herein are taken from the Joint Claim Construction Statement filed May 1, 2006.

[3] The Court has not adopted either party's proposed construction. Plaintiff's proposed construction is overly broad because it does not require that wafers "exit" from the "exit station." Defendant's proposed construction is too narrow; assuming, arguendo, the "exit station" described in the specification is "dedicated" to the removal function, defendant fails to show why the claims are limited to the preferred embodiments.

[4] Plaintiff's alternative position is stated in its reply brief. (See Pl.'s Reply Brief on Claim Construction at 6:12-15.)

1 subject to means-plus-function construction. The Court finds the function performed by
2 such means is "moving the wafer within and from the exit station."[5] The Court, for the
3 reasons stated by defendant, further finds the corresponding structure is "water track 10,"
4 and equivalents thereof.

**3. Wafer Cassette (Claims 1 and 21)**

Plaintiff argues "wafer cassette" should be construed as "a structure that holds one or more wafers." Defendant argues "wafer cassette" should be construed as "an open structure that holds one or more wafers."

The Court finds "wafer cassette" is properly construed as "a wafer carrier that holds one or more wafers and keeps them separate."[6]

**4. So Dimensioned As to Be Installable Within the Exit Station of the Processing Machine (Claim 1)**

Plaintiff argues "so dimensioned as to be installable within the exit station of the processing machine" should be construed as "designed for use in the exit station." Defendant argues "so dimensioned as to be installable within the exit station of the processing machine" should be construed as "specifically designed for use in a claimed exit station."

The Court, for the reasons stated by plaintiff, finds "so dimensioned as to be installable within the exit station of the processing machine" is properly construed as "designed for use in the exit station."

---

[5] Plaintiff's proposed construction is overly broad in that it could encompass any "location." See '689 Patent, col. 5, ll. 63-65. Defendant's proposed function is too narrow in that it would improperly exclude a preferred embodiment. See id., col. 4, ll. 20-24 ("The flow of water [in water track] causes the wafer to move toward and under the now raised gate. A sensor determines when the wafer successfully passes out of the water track.") (emphasis added).

[6] The Court has not adopted either party's proposed construction. Defendant has failed to show the claimed "wafer cassette" must be "open" at all times. Both parties' reference to a "structure that holds one or more wafers" fails to provide sufficient clarity; both parties agree, however, that a "wafer cassette" is a type of "wafer carrier" that, in addition to holding wafers, keeps them separate. (See Pl.'s Opening Brief on Claim Construction at 16; Gwozdz Decl. ¶¶ 23-24, Ex. H.)

3

**5. Holding Unit for Receiving and Holding the Wafer in a Measuring Position During Measurements (Claims 1 and 21)**

Plaintiff argues "holding unit for receiving and holding the wafer in a measuring position during measurements" is not subject to means-plus-function construction, and should be construed as "an assembly that receives and holds wafers in position while they are being measured." In the alternative, plaintiff argues the structures corresponding to the above-quoted function, specifically, "receiving and holding wafers in position while they are being measured," are "gripper 42" and "protruding surfaces 84" or, alternatively, "piston 160" and "measurement support 168."[7]

Defendant argues the term is subject to means-plus-function construction, the function is "receiving the wafer and holding the wafer in a fixed position during multiple measurements," and the corresponding structure is "gripping system 34" or, alternatively, "gripping unit 132."[8]

The Court, for the reasons stated by defendant, finds the term is subject to means-plus-function construction. The Court, for the reasons stated by plaintiff, finds the function performed by the means is "receiving and holding the wafer in position while it is being measured." The Court further finds the corresponding structures are "gripper 42," "vacuum pad 44," and "protruding surfaces 84," and equivalents thereof, or alternatively, "piston 160," "vacuum pad 152," and "measurement support 168," and equivalents thereof.[9]

//
//

---

[7] Plaintiff stated its alternative position at the claim construction hearing.

[8] Defendant first identified "gripping unit 132" as a corresponding structure in its claim construction brief. (See Def.'s Claim Construction Brief, filed June 29, 2006, at 24:8-9.)

[9] Although the Court adopts the corresponding structures proposed by plaintiff, the Court has added "vacuum pad 44" and "vacuum pad 152." See '689 Patent, col. 3, ll. 39-41 ("Once the wafer 25 is in the wafer collecting position, as shown in Fig. 4, gripper 42 lowers vacuum pad 44 to grab the wafer 25."); id., col. 5, ll. 26-29 ("Once the wafer support 150 has the wafer in a predefined position, the vacuum pad 152, which is controlled by piston 160, moves toward the wafer and grabs it by applying a vacuum.").

4

**6. Associated With an Exit Station (Claim 21)**

Plaintiff argues "associated with an exit station" should be construed as "joined to, installed in, or closely connected with the exit station of a processing machine, where the exit station includes a wafer transfer means and can accommodate at least one wafer cassette." Defendant argues "associated with an exit station" should be construed as "residing at least partially inside the exit station of the processing machine."

The Court, for the reasons stated by plaintiff, finds "associated with an exit station" is properly construed as "joined to or installed in the exit station."[10]

**7. Collecting Light Reflected From the Illuminated Water (Claims 1 and 21)**

Plaintiff argues the word "water" in the term "collecting light reflected from the illuminated water" is a typographical error, that "water" should be construed as "wafer," and that such error is the type of obvious error a district court can correct.[11] Defendant argues "water" is not a typographical error or, in the alternative, not the type of typographical error subject to correction by the court.

The Court, for the reasons stated by plaintiff and as discussed at the October 19, 2006 claim construction hearing, finds Claims 1 and 21 contain an obvious typographical error wherein "water" is used erroneously in place of "wafer," and, accordingly, construes "collecting light reflected from the illuminated water" as "collecting light reflected from the

---

[10] The Court has not included in its construction plaintiff's proposed additional language, specifically, "of a processing machine," "where the exit station includes a wafer transfer means and can accommodate at least one wafer cassette," and "closely connected with." The first of these phrases is already included in Claim 21. See '689 Patent, col. 7, ll. 14-15. The second is a proposed construction of "that includes a wafer transfer means and at least one wafer cassette," which is not one of the seven disputed terms before the Court. The third could be understood as covering a disclaimed construction. (See Duggan Decl. Ex. D at 11-12 (disclaiming "measurement device" located "adjacent to" exit station).)

[11] As an alternative to correction by the court, plaintiff argues the certificate of correction issued by the Patent and Trademark Office ("PTO") on July 19, 2005, by which the PTO replaced the word "water" in Claims 1 and 21 with "wafer," is controlling herein. (See Bruno Decl. Ex. 1.) The certificate is inapplicable herein, however, because plaintiff filed the instant action before the PTO issued the certificate. See Southwest Software, Inc. v. Harlequin Inc., 226 F. 3d 1280, 1294-95 (Fed. Cir. 2000) (holding certificate of correction "not effective" with respect to cause of action arising before issuance of certificate).

1 illuminated wafer."

2 **IT IS SO ORDERED**.

4 Dated: December 1, 2006

MAXINE M. CHESNEY
United States District Judge

6